UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BALDEV RAHI, et al., | Case No. 21-cv-02717-LB |
| Plaintiffs, | |
| v. | **ORDER DENYING IN PART AND GRANTING IN PART MOTIONS TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| SPECIALIZED LOAN SERVICING, LLC, et al., | |
| Defendants. | Re: ECF Nos. 85, 87, 89 |

## INTRODUCTION

This action arises from a dispute over a residential mortgage. The plaintiffs, Baldev and Surinder Rahi, have sued in their individual capacities and as trustees and beneficiaries of their living trust. They allege that the defendants failed to properly account for mortgage payments. The plaintiffs obtained a mortgage loan from defendant Bank of America in 2005 for property in Hercules, California, which is now owned by their trust. After several modifications, the loan was assigned to MEB Loan Trust IV, U.S. Bank National Association (U.S. Bank), in 2019, and Specialized Loan Servicing, LLC (Specialized) was designated as the loan servicer. The plaintiffs claim that several payments made on the loan were not credited properly and that the alleged errors affected their credit scores and ability to obtain financing for a two-story mixed-use

commercial/residential project that they refer to as the Appian Way Project. The trust also owns the Appian Way Project property.[1]

The plaintiffs assert the following claims: (1) violations of the Rosenthal Fair Debt Collection Practices Act (all plaintiffs against U.S. Bank and Specialized); (2) violations of the Fair Debt Collection Practices Act (all plaintiffs against U.S. Bank); (3) breach of the implied covenant of good faith and fair dealing (individual plaintiffs against Bank of America and U.S. Bank); (4) violations of the Fair Credit Reporting Act (individual plaintiffs against Bank of America); and (5) violations of the California Consumer Credit Reporting Agencies Act (individual plaintiffs against Bank of America).[2]

The defendants each moved to dismiss all claims asserted against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The court dismisses, with prejudice, the Rosenthal Act claim brought on behalf of the trust, the plaintiffs' Fair Debt Collection Practices Act claim, and the plaintiffs' California Consumer Credit Reporting Agencies Act claim. The Rosenthal Act claim asserted on behalf of the trust fails because the trust is not a party to the subject loan and is, thus, not a debtor for purposes of the Act. U.S. Bank is not a "debt collector" for purposes of the Fair Debt Collection Practices Act. The California Consumer Credit Reporting Agencies Act claim fails because the plaintiffs have not adequately alleged that Bank of America had reason to know any of the information it furnished concerning the plaintiffs was inaccurate. The remaining claims survive.

---

[1] Third Am. Compl. – ECF No. 75 at 2 (¶¶ 1–2), 3–7 (¶¶ 7–31). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 8–14 (¶¶ 32–63).

[3] Mots. – ECF Nos. 85, 87, 89.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

STATEMENT[4]

In March 2005, the plaintiffs obtained a $500,000 mortgage (the loan) from Bank of America for a property on Turquoise Drive, in Hercules, California, in Contra Costa County.[5] In July 2006, the plaintiffs entered into a modification agreement with Bank of America that increased the credit limit to $650,000.[6] The plaintiffs again raised the credit limit — this time to $700,000 — in August 2007.[7] In May 2015, the plaintiffs transferred the Turquoise Drive property to the Baldev Rahi & Surinder Rahi Living Trust, U/A (the trust), of which the plaintiffs are trustees and beneficiaries.[8] The plaintiffs received a Notice of Default and a "Notice of Servicing Transfer" from U.S. Bank and Specialized on or about October 9, 2019.[9]

The October 9, 2019, Notice of Servicing Transfer indicated that on September 27, 2019, the loan and deed of trust was assigned to U.S. Bank and that Specialized was servicing the loan. According to the notice, Bank of America would no longer accept payments on the mortgage, and the plaintiffs were directed to make all future payments to U.S. Bank and Specialized.[10]

Regarding the Notice of Default that the plaintiffs also received on October 9, 2019, the plaintiffs admit ignoring it because they thought it was sent in error.[11] The plaintiffs allege that they never missed a monthly payment on their loan while Bank of America held the loan, and that they sometimes overpaid.[12] The plaintiffs also allege that during the pendency of their loan, they

---

[4] The Statement summarizes information from the Third Amended Complaint, the state-court record (attached to the Notice of Removal), and other records that the parties ask the court to judicially notice. *See* Exs. A and B to Compl. – ECF No. 75 at 16–33; Reqs. for Jud. Notice – ECF Nos. 88, 90. The court considers the loan documents and credit reports under the incorporation-by-reference doctrine and the public records by judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[5] Compl. – ECF No. 75 at 3 (¶¶ 12–13); Loan Agreement, Ex. A to Compl. – ECF No. 75 at 16–29.

[6] Modification of Deed of Trust, Ex. 2 to Reqs. for Jud. Notice – ECF Nos. 88, 90 at 10–14.

[7] Modification of Deed of Trust, Ex. 3 to *id.* – ECF Nos. 88, 90 at 16–20.

[8] Compl. – ECF No. 75 at 2 (¶¶ 1–2), 3 (¶ 14).

[9] *Id.* at 4 (¶¶ 16, 19).

[10] *Id.* (¶ 16).

[11] *Id.* (¶ 19).

[12] *Id.* at 3 (¶ 15).

"never missed a payment that was not cured the next month or shortly thereafter."[13] According to the plaintiffs, the balance on the loan account was $309,427.35 at the time of the loan transfer, but after the transfer, the balance increased to $310,418.38 due to an "erroneous" $991.03 charge.[14]

In June 2020, the plaintiffs attempted to refinance the Turquoise Drive property to help fund a mixed-use construction project on a separate property in El Sobrante, California that they call the Appian Way Project, which the trust owned.[15] On June 22, 2020, Quicken Loans denied the refinancing application due to "[c]urrent/previous slow payments, judgments, liens or BK [presumably, bankruptcy]."[16] Plaintiff Baldev Rahi called Quicken Loans for further clarification, and a Quicken representative allegedly stated that the denial was based on the loan default.[17]

In the complaint, the plaintiffs list six specific payments they made that U.S. Bank and Specialized allegedly did not credit: "(1) $2,798.61 (May 2020), (2) $2,800.00 (June 2020), (3) $2,798.00 (July 2020), (4) $2,799.00 (August 2020), (5) $2,799.60 (September 2020), and (6) $2,799.60 (October 2020)."[18] In late November 2020, the plaintiffs' previous attorney, Jonathan Black, asked U.S. Bank and Specialized why these payments were not credited.[19] The plaintiffs asked that U.S. Bank and Specialized correct the account statements to include their missing payments, and they submitted their bank statements showing their payments.[20] U.S. Bank and Specialized customer service said they would look into the matter but continued to send Notices of Default and Intent to Foreclose monthly, from November 2020 through February 2021.[21]

The plaintiffs seek special and general damages in an amount not less than $75,000, statutory and/or consequential damages, punitive and exemplary damages, injunctive relief, and damages

---

[13] *Id.* at 4 (¶ 18).

[14] *Id.* (¶¶ 17–18).

[15] *Id.* at 5 (¶¶ 20–21).

[16] *Id.* (¶ 21).

[17] *Id.*

[18] *Id.* at 7 (¶ 28).

[19] *Id.* at 6 (¶ 23).

[20] *Id.* (¶ 24).

[21] *Id.* at 6–7 (¶¶ 25–27).

United States District Court
Northern District of California

for pain and suffering and/or emotional distress.[22] The parties consented to magistrate-judge jurisdiction.[23] The court held a hearing on the motions to dismiss on April 28, 2022.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

"All allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

---

[22] *Id.* at 14–15.

[23] Consents – ECF Nos. 4, 6, 41, and 48.

**ANALYSIS**

The plaintiffs contend that (1) U.S. Bank and Specialized willfully misrepresented the amount of the plaintiffs' debt in violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788.17 and 1788.30; (2) U.S. Bank violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692f and 1692k, by threatening nonjudicial foreclosure action and misrepresenting that the plaintiffs defaulted on the loan; (3) U.S. Bank and Bank of America failed to account for certain payments made since the loan transfer and thereby breached the implied covenant of good faith and fair dealing; (4) Bank of America failed to properly account for payments and reported inaccurate information to consumer reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681s-2(b) and 1681i; and (5) Bank of America willfully and knowingly violated the California Consumer Credit Reporting Agencies Act, California Civil Code § 1785.25, by reporting inaccurate information to consumer credit reporting agencies that it knew or should have known was incorrect.[24] The plaintiffs assert claims one and two in their individual capacities and as trustees and beneficiaries of the trust. The plaintiffs assert claims three through five in their individual capacities only.

The court dismisses (1) the Rosenthal Act claim (claim one) to the extent asserted by the plaintiffs in their capacities as trustees and beneficiaries because the trust is not a party to the loan, (2) the Fair Debt Collection Practices Act claim (claim two) because the plaintiffs have not plausibly alleged that U.S. Bank is a "debt collector," and (3) the California Consumer Credit Reporting Agencies Act claim (claim five) because it is not plausibly pled.

**1. Rosenthal Act**

The court previously dismissed this claim based on the plaintiffs' failure to allege that U.S. Bank and Specialized violated California Civil Code § 1788.17.[25] The plaintiffs corrected this

---

[24] *Id.* at 8–14 (¶¶ 32–63).

[25] Order – ECF No. 55 at 13–14.

defect.[26] Now Specialized and U.S. Bank have separately moved to dismiss the plaintiffs'

Rosenthal Act claim on the ground that the claim is time-barred.[27] Specialized and U.S. Bank

specifically contend that the applicable one-year limitations period bars "two of the three"

Rosenthal Act claims.[28] Specialized and U.S. Bank also ask the court to dismiss claims asserted on

behalf of the trust.[29] The plaintiffs rely on equitable tolling to save the two contested claims and

argue that even if two of the three claims must be dismissed, they should be permitted to maintain

their third claim.[30] The plaintiffs do not contest the dismissal of the Rosenthal Act claims asserted

on behalf of the trust.[31]

The court dismisses the Rosenthal Act claim asserted on behalf of the trust because there is no

allegation that the trust was a party to the loan. *See Masuda v. Citibank, N.A.*, 38 F. Supp. 3d

1130, 1133 (N.D. Cal. 2014) (holding that the plaintiff had standing to bring a Rosenthal Act

claim where the plaintiff "was alleged to owe a debt" and distinguishing cases where the plaintiff

lacked standing to bring a Rosenthal Act claim because the plaintiff "was not obligated or

allegedly obligated to owe a debt.").

Regarding the time-bar issue, the plaintiffs filed the original complaint on March 16, 2021.[32]

The most recent alleged violation occurred on June 11, 2021.[33] That of course falls within the one-

year limitations period applicable to Rosenthal Act claims. *Poorsina v. Peak Foreclosure Servs.,

Inc.*, No. 20-cv-08282-WHO, 2021 WL 308609, at *3 (N.D. Cal. Jan. 29, 2021) (citing Cal. Civ.

Code § 1788.30(f)). This fact alone is sufficient to save the plaintiffs' Rosenthal Act claim.

Furthermore, courts in this district have applied the continuing violation doctrine to Rosenthal

Act claims where there is a "continuing pattern and course of conduct." *Joseph v. J.J. Mac Intyre*

[26] Compl. – ECF No. 75 at 8 (¶¶ 34–35).

[27] Mot. – ECF No. 87 at 16–17; Mot. – ECF No. 89 at 13–14.

[28] Mot. – ECF No. 87 at 16; Mot. – ECF No. 89 at 13.

[29] Mot. – ECF No. 87 at 16; Mot. – ECF No. 89 at 13.

[30] Opp'n – ECF No. 94 at 5–7; Opp'n – ECF No. 95 at 3–4.

[31] Opp'n – ECF No. 94 at 5–7; Opp'n – ECF No. 95 at 3–4.

[32] Notice of Removal – ECF No. 1 at 2.

[33] Compl. – ECF No. 75 at 9 (¶ 37).

1    *Cos.*, 281 F. Supp. 2d 1156, 1161–62 (N.D. Cal. 2003). In such cases, a claim is timely if filed

2    within one year of the most recent violation. *Id.* at 1161. In this respect, courts have allowed

3    claims to proceed on a continuing-violation theory where there was a series of collection letters.

4    *Cruz v. Int'l Collection Corp.*, No. C 08-991, 2008 WL 2263800, at *2 (N.D. Cal. June 2, 2008)

5    (holding that the plaintiff was "entitled to base her claims on the entire course of conduct she has

6    alleged" where there was an undisputed continuing pattern of collection letters).

7        Here, the plaintiffs allege that erroneous "Notices of Default . . . were sent on a monthly basis

8    to Individual Plaintiffs from November 2020 through the filing of this complaint."[34] This

9    allegation supports a plausible claim under the continuing violation doctrine. The defendants'

10   citation to *Scharp v. Legacy Health Sys.* — an out-of-district case that did not involve the

11   Rosenthal Act and instead involved dismissal of time-barred employment claims — is not

12   particularly relevant or helpful.[35] No. 06 1213 MO, 2007 WL 756716, at *5 (D. Or. Mar. 8, 2007)

13   (striking untimely discrimination claims).

14       The court does not reach the plaintiffs' equitable tolling argument because the plaintiffs'

15   claims would survive the motion to dismiss even without the equitable tolling doctrine.

16       The motions of Specialized and U.S. Bank to dismiss the plaintiffs' Rosenthal Act claim are

17   denied.

18

19   **2. Fair Debt Collection Practices Act**

20       U.S. Bank moved to dismiss the claim for Fair Debt Collection Practices Act violations on the

21   grounds that U.S. Bank (1) is not a debt collector for purposes of the Act and (2) cannot be liable

22   for collecting its own debt.[36]

23       To prevail on a Fair Debt Collection Practices Act claim, the plaintiff must establish the

24   following: "(1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of

25

26   _____

27   [34] *Id.* at 8 (¶ 35).

     [35] Mot. – ECF No. 87 at 17; Mot. – ECF No. 89 at 12.

28   [36] Mot. – ECF No. 87 at 18–20.

United States District Court
Northern District of California

1  a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15

2  U.S.C. § 1692o(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§

3  1692a-1692o." *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal.

4  2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004)). The Act "imposes liability

5  only when an entity is attempting to collect debt." *Ho v. ReconTrust Co.*, 858 F.3d 568, 571 (9th

6  Cir. 2017) (citing 15 U.S.C. § 1692(e)). Regarding the applicability of the Act to mortgage-

7  foreclosure efforts, the Act applies to these activities, but "kicks in only once a person does

8  something in addition to the actions required to enforce a security interest." *Barnes v. Routh*

9  *Crabtree Olsen PC*, 963 F.3d 993, 999 (9th Cir. 2020) (cleaned up).

10  U.S. Bank's challenge to the plaintiffs' Fair Debt Collection Practices Act claim is based on its

11  contention that it is not a debt collector. A "debt collector" includes any person (1) "who uses any

12  instrumentality of interstate commerce or the mails in any business the principal purpose of which

13  is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or

14  indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A

15  mortgage trustee is not, in general, a "debt collector" for purposes of the Act. *Ghalehtak v. Fay*

16  *Servicing, LLC*, No. 17-cv-05976-EMC, 2017 WL 4805589, at *4 (N.D. Cal. Oct. 25, 2017).

17  There is, however, an exception for § 1692f(6) claims because § 1692a(6) explicitly defines "debt

18  collector" for purposes of § 1692f(6) to include businesses whose primary purpose is "the

19  enforcement of security interests." *Id.*

20  To adequately plead that a defendant is a debt collector for purposes of the Act, a "conclusory

21  assertion is insufficient because Plaintiff must plead the 'factual content' necessary to support a

22  reasonable inference that Defendant is a 'debt collector.'" *Fiorilli v. Wells Fargo Bank, N.A.*, No.

23  C-14-CV-00557 (DMR), 2014 WL 5454396, at *2 (N.D. Cal. Oct. 27, 2014). Regarding the

24  "principal purpose" category of debt collector, "the relevant question in assessing a business's

25  principal purpose is whether debt collection is incidental to the business's objectives or whether it

26  is the business's dominant, or principal, objective." *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d

27  1089, 1093 (9th Cir.), *cert. denied sub nom.*, *DNF Assocs., LLC v. McAdory*, 141 S. Ct. 627

28  (2020).

The court previously dismissed this claim based on the plaintiffs' failure to allege that U.S. Banks' "business is debt collection."[37] In the operative Third Amended Complaint, the plaintiffs argue that U.S. Bank is a "debt collector" because its "principal purpose" is debt collection or, in the alternative, it regularly collects the debts of another.[38] To support these conclusory allegations, the plaintiffs cite U.S. Bank's (1) acquisition of the loan while it was in default and (2) issuance of notices of default shortly thereafter.[39] The plaintiffs also contend that U.S. Bank's sending notices of default "from November 2020 through the filing of this complaint [that] all misrepresented Individual Plaintiffs' outstanding balance and falsely represented that the Loan was in default" supports their claim.[40] These allegations do not provide grounds to infer anything about U.S. Bank's business objectives. Thus, the allegations do not plausibly establish that U.S. Bank's principal purpose is debt collection.

The plaintiffs' second theory — that U.S. Bank is a "debt collector" because it regularly collects the debts of another — fares no better. U.S. Bank contends that it cannot be liable on a "regular collection" theory because it owned the plaintiffs' loan and was therefore not collecting the debt of another.[41] The plaintiffs argue that a person collecting its own debt may still be a debt collector if the debt was acquired while in default.[42]

The plaintiffs' argument is untenable under recent Supreme Court precedent. In *Henson v. Santander Consumer USA Inc.*, the Court held that persons collecting their own debt, even a debt acquired after default, do not fit the definition of a "debt collector" based on the regular-collection prong of the test. 137 S. Ct. 1718, 1724 (2017); *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d at 997 ("Because the debt must be owed or due 'another,' an entity that collects a debt owed itself— even a debt acquired after default—does not qualify under this definition.") (citing *Henson v.*

---

[37] Order – ECF No. 55 at 10.

[38] Compl. – ECF No. 75 at 10 (¶ 41).

[39] *Id.*

[40] *Id.* at 10–11 (¶ 43).

[41] Mot. – ECF No. 87 at 19–20.

[42] Opp'n – ECF No. 94 at 7.

United States District Court
Northern District of California

1  *Santander Consumer USA Inc.*, 137 S. Ct. at 1724). Based on *Henson*, plaintiffs would need to

2  allege facts establishing that U.S. Bank is regularly collecting debts of others to establish that it is

3  a "debt collector" under the regular-collection prong. The plaintiffs have not alleged any such

4  facts.

5      The court dismissed the Fair Debt Collection Practices Act claim with prejudice.

6

7  **3.  Breach of the Implied Covenant of Good Faith and Fair Dealing**

8      Bank of America moved to dismiss the claim for breach of the implied covenant of good faith

9  and fair dealing because (1) the plaintiffs admit failing to adhere to the repayment schedule, and

10  (2) the plaintiffs admit receiving the "line of credit."[43] U.S. Bank, similarly, moved to dismiss on

11  the basis of the plaintiffs' admission that they submitted late payments.[44] U.S. Bank also argues

12  that the implied-covenant claim fails because the claimed damages are inadequately pleaded and

13  preempted.[45]

14      **3.1  Choice of Law**

15      Although not addressed in the parties' briefing, the first issue is determining what law applies to

16  the plaintiffs' breach-of-implied-covenant claim, which arises from a contract that has a choice-of-

17  law clause.[46] Federal district courts apply state substantive law and federal procedural rules when

18  sitting in diversity. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To determine the substantive

19  law applicable to state-law claims, federal district courts apply the choice-of-law principles of the

20  state where their district is. *Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). California's

21  choice-of-law rules provide that California substantive law generally applies unless a "true conflict"

22  is found between the laws of the potentially interested states. *Id.* But where claims arise from a

23  contract with a choice-of-law provision, the court applies the law designated in the contract unless (1)

24  the state designated in the contract has no substantial relationship to the parties or transaction, or (2)

25  _____

26  [43] Mot. – ECF No. 85 at 4–5.

    [44] Mot. – ECF No. 87 at 20–22.

27  [45] *Id.* at 22–27.

28  [46] Loan Agreement, Ex. A to Compl. – ECF No. 75 at 28.

United States District Court
Northern District of California

applying the chosen law would run contrary to a California public policy or evade a California statute. *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995); *see also Duvall v. Galt Med. Corp.*, No. C-07-03714 JCS, 2007 WL 4207792, at *8 (N.D. Cal. Nov. 27, 2007).

The loan agreement attached to the complaint provides that the law of North Carolina governs the loan contract.[47] According to the complaint, Bank of America maintains its principal place of business in North Carolina.[48] This appears to create a substantial connection between the chosen state law (North Carolina) and the subject transaction. For instance, courts in this district have applied the chosen state's law to contract claims where one party is incorporated in the chosen state. *Duvall*, 2007 WL 4207792, at *8 ("The fact that Theragenics is incorporated in Delaware and its principal place of business is in Georgia is sufficient to establish a 'substantial relationship' [with Georgia]."). Moreover, the court is not aware of any California public policy that North Carolina law would undermine.

Thus, North Carolina law appears to apply to the implied-covenant claim despite the parties' apparent agreement that California law applies.

### 3.2   Breach of Implied Covenant Under North Carolina

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract," and in every contract "there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Pork Co. v. Summit Invs. Se.*, No. 7:17-cv-98-FL, 2017 WL 3496487, at *5 (E.D.N.C. Aug. 15, 2017) (cleaned up).

Preliminarily, the moving parties have not identified any North Carolina law requiring dismissal of the plaintiffs' claims based on their alleged failure to perform.[49] This alone is reason to deny the motions to dismiss the implied-covenant claim. Nevertheless, because the parties have relied on

---

[47] *Id.*

[48] Compl. – ECF No. 75 at 2 (¶ 5).

[49] Mots. – ECF Nos. 85 and 87.

United States District Court
Northern District of California

California law in the moving papers, the court considers whether the claim could survive under California law.[50]

### 3.3   Breach of Implied Covenant Under California Law

To the extent Bank of America and U.S. Bank contend that California, not North Carolina law applies, their motions also fail. California law provides that the implied covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). The specific elements required are as follows: "(1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Bostwick v. SN Servicing Corp.*, No. 21-cv-02560-LB, 2021 WL 2515714, at *5 (N.D. Cal. June 18, 2021) (first citing *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007); then citing Jud. Council of Cal. Civ. Jury Instructions § 325 (2020)).

The plaintiffs' admitted failure to make timely payments does not necessarily bar their breach of the implied covenant claim based on non-performance of contractual obligations. While the plaintiffs admit making late payments, they claim that their late payments were "cured." The plaintiffs also contend that they "timely and fully made all payments owed to [U.S. Bank and Bank of America] prior to and following the Loan Transfer."[51] Thus, the plaintiffs do not argue that they failed to perform and were excused. Rather, they contend that they performed by "curing" the late payments under the contract.

Untimely performance is different than failing to perform at all. *Compare Golden v. JPMorgan Chase Bank, N.A.*, No. 16-cv-1209-BTM (JMA), 2017 WL 3582981, at *6 (S.D. Cal. Aug. 18, 2017) ("[The plaintiff] admits non-performance when he alleges he fell behind on his

---

[50] Mot. – ECF Nos. 85 at 4 (citing California law); Opp'n – ECF No. 93 at 4.

[51] Compl. – ECF No. 75 at 4 (¶ 18), 12 (¶ 48).

United States District Court
Northern District of California

loan payments, and he fails to dispel this state of non-performance by, for example, alleging that he cured or even offered to cure his default under the terms of the [Deed of Trust].”), *with Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, 2015 WL 6126815, at *6 (N.D. Cal. Oct. 19, 2015) (“Plaintiff for the first time argues that Defendant's conduct in the bankruptcy proceedings excused her performance—*i.e.*, that Plaintiff did not substantially perform, but that substantial performance was excused.”).

The plaintiffs' claims here are different from claims involving non-performance where mortgagors attempt to maintain breach of contract or breach of implied covenant claims after completely ceasing to make payments without an excuse. *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1050 (C.D. Cal. 2012) (dismissing breach of contract claim without prejudice where the plaintiff alleged that she “timely paid her mortgage payments ‘until 2008’ and was then denied a loan modification”). Moreover, the *Ladewig v. Bank of N.Y. Mellon Corp.* decision — on which U.S. Bank relies — is not helpful.[52] No. CV-20-4032-MWF (KSx), 2021 U.S. Dist. LEXIS 12548, at *4 (C.D. Cal. Jan. 21, 2021).

In that case, the court held that the plaintiffs' claims of performance were implausible because the plaintiff did not allege making “timely payments, as required by” the loan and the plaintiff admitted paying “multiple late charges.” *Id.* at *4. The *Ladewig* court then held that the plaintiff's admission that he paid late fees undermined his claims that “he should have to pay only the principal amount of the loan.” *Id.* In essence, the *Ladewig* court held that the plaintiff's claims were implausible because his admissions contradicted his theory of liability. *Id.*

The plaintiffs' claims are different because their admissions do not contradict their theory of liability. The plaintiffs argue that accounting errors harmed their credit. The plaintiffs' implicit concession to making late payments or “curing” missed payments does not undermine their claim that the defendants did not properly account for their payments.[53] Also, unlike the *Ladewig*

---

[52] Mot. – ECF No. 87 at 21.

[53] Compl. – ECF No. 75 at 4 (¶ 19) (“[The plaintiffs] have never missed a payment that was not later cured for the Loan.”).

plaintiff, the plaintiffs expressly allege that they made "timely" payments.[54] Furthermore, even if the plaintiffs' admissions amount to nonperformance, the allegations — if construed in the light most favorable to the plaintiffs — plausibly establish an excuse for any nonperformance. For instance, their claimed practice of sometimes making large payments may provide grounds to excuse any missed payments that were later cured.[55] *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 942 (N.D. Cal. 2015) ("Plaintiff's nonperformance, however, is excused by Wells Fargo's alleged interference . . . [by] accept[ing] [automatic] payment for . . . six months, then allegedly refus[ing] payment and cancel[ing] the plan altogether.").

Accordingly, the plaintiffs' failure to allege an excuse for non-performance does not warrant dismissal because the plaintiffs have plausibly alleged that they performed their obligations under the loan.

### 3.4   Breach of Implied Covenant — Benefit of the Bargain

Bank of America's second argument — that the plaintiffs cannot maintain the implied-covenant claim because they received a "line of credit" — also fails. Courts have recognized that in the context of a loan, the "benefits of the bargain" include loan proceeds and accurate accounting.[56] *See Siqueiros v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-01789-VAP, 2014 WL 3015734, at *7 (C.D. Cal. June 27, 2014) ("By allegedly failing to 'provide the trustor with an accurate accounting of the amounts due to cure a default,' BOA deprived Siqueiros of a benefit of the agreement, *i.e.*, the ability to avoid losing her property through foreclosure if she paid the amount in arrears.").

### 3.5   Breach of Implied Covenant — Causation and Emotional Distress Damages

U.S. Bank challenges the sufficiency of the plaintiffs' allegations concerning causation and damages.[57] First, U.S. Bank contends that the plaintiffs cannot link their damages (based on the

---

[54] *Id.* at 12 (¶¶ 48–49).

[55] *Id.* at 4 (¶ 18) ("[The plaintiffs'] practice of sometimes making payments in a greater amount than the scheduled monthly minimums may have caused problems in [Bank of America's] accounting.").

[56] *Id.* at 12 (¶ 49); Opp'n – ECF No. 93 at 3–4.

[57] Mot. – ECF No. 87 at 22–27.

United States District Court
Northern District of California

funds they purportedly spent on the Appian Way Project) to the alleged breach.[58] The plaintiffs' allegations are simple: they have not been able to develop the Appian Way Project, which they own through the trust, because U.S. Bank's failure to accurately account for loan payments harmed their creditworthiness.[59] This straightforward theory is plausible and, therefore, sufficient at the pleading stage.

Second, emotional distress damages may be recovered for a breach of the implied covenant of good faith and fair dealing. *Beckham v. Evanston Ins. Co.*, No. 20-cv-03484-JSC, 2021 WL 3173188, at *2 (N.D. Cal. July 27, 2021) ("One remedy for breach of the implied covenant of good faith and fair dealing is recovery of the insured's emotional distress damages."). In this regard, plaintiff Baldev Rahi alleges suffering "sleeplessness, stress, nervousness, loss of appetite, and agitation" and this plausibly supports a claim for emotional distress damages.[60] Although both plaintiffs allege suffering emotional distress, plaintiff Surinder Rahi has not separately alleged facts supporting emotional distress damages.[61] Nonetheless, this does not warrant dismissing the breach of implied covenant claim because the plaintiffs have plausibly alleged entitlement to some damages on this claim.

### 3.6   Breach of Implied Covenant — Preemption

U.S. Bank's preemption argument is not persuasive. U.S. Bank contends that the plaintiffs cannot recover damages on their implied breach of contract claim because their only potentially viable damages are "based on the alleged decrease in Plaintiff Baldev's credit score" and claims for such damages are only available under the Fair Credit Reporting Act.[62] This argument fails because the Fair Credit Reporting Act does not preempt contract claims.

Several courts have held that the Fair Credit Reporting Act preempts claims "based on state laws relating to activity covered by [15 U.S.C.] Section 1681 s–2." *Desser v. United States*, No.

---

[58] *Id.* at 24–25.

[59] Compl. – ECF No. 75 at 5–6 (¶¶ 20–22).

[60] *Id.*

[61] *Id.* at 12 (¶ 52).

[62] Mot. – ECF No. 87 at 26.

United States District Court
Northern District of California

CV 13-09190 DDP (CWX), 2014 WL 4258344, at *6 (C.D. Cal. Aug. 27, 2014); *see also Subhani v. JPMorgan Chase Bank, Nat'l Ass'n*, No. C 12-01857 WHA, 2012 WL 1980416, at *5 (N.D. Cal. June 1, 2012) ("[15 U.S.C.] Section 1681t(b)(1)(F) 'appears to preempt all state law claims based on a creditor's responsibilities under Section 1681s–2.'") (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009)).

Concerning the activity covered by the Act, § 1681s–2 establishes the obligation of credit furnishers to refrain from reporting information that they know or have "reasonable cause to believe . . . is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). The plaintiffs' implied breach claim is premised on failures that "prevented the preservation of Individual Plaintiffs' credit scores."[63] Therefore, it seems that the plaintiffs' claims fall within the preemptive scope of the Fair Credit Reporting Act.

Even though the plaintiffs' breach-of-implied-covenant claim is based on activity covered by § 1681s–2, it survives because the implied covenant claim is based on contractual duties and not duties imposed by state law. Courts have held that the Fair Credit Reporting Act does not preempt claims arising from contract rather than state law. *Desser*, 2014 WL 4258344, at *6 ("[C]laims asserted by Plaintiffs that sound in contract-breach of contract, implied covenant of good faith, and promissory estoppel—are not preempted under Section 1681t(b)(1) (F), even to the extent that they assert damages related to the disclosure of credit information."); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1152 (C.D. Cal. 2012) ("[T]his Court follows the authorities cited above and holds that a 'breach of contract claim . . . is not preempted by the [Fair Credit Reporting Act].'") (quoting *Spencer v. Nat'l City Mortg.*, 831 F.Supp.2d 1353, 1356, 1364 (N.D. Ga. 2011)).

The defendants argue that even if claims for breach of contract escape preemption, claims for breaches of the implied covenant should not because they are more like state-law claims.[64] The court recognizes that the distinction between a breach-of-contract and a breach-of-implied-covenant claim may impact the preemption analysis. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281, 286

---

[63] Compl. – ECF No. 75 at 12 (¶ 49).

[64] Mot. – ECF No. 87 at 26–27.

United States District Court
Northern District of California

1  (2014) (holding that the Airline Deregulation Act preempted a state-law breach-of-implied-

2  covenant claim even though it does not preempt breach-of-contract claims). Nonetheless, without

3  contrary guidance from the Ninth Circuit, the court will allow the breach-of-implied-covenant

4  claim to proceed.

5      The court denies Bank of America's and U.S. Bank's motions to dismiss the plaintiffs' breach-

6  of-implied-covenant claim.

7

8  **4.  Fair Credit Reporting Act**

9      Bank of America moved to dismiss the Fair Credit Reporting Act claim on the basis that it is

10  (1) not liable under § 1681s-2(b) because the plaintiffs "have not pointed to an actual inaccuracy

11  in" its reporting and (2) not liable under § 1681i because that provision applies only to consumer

12  reporting agencies and not credit furnishers like Bank of America.[65]

13     "To state a claim under the [Fair Credit Reporting Act], a plaintiff must show that: (1) he

14  found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit

15  reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher

16  failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15

17  U.S.C. § 1681s–2(b)(1)(A)–(E)." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144

18  (N.D. Cal. 2016) (cleaned up).

19     The plaintiffs allege that they "notified consumer reporting agencies of the dispute over the

20  accuracy of the information furnished by [Bank of America]."[66] This allegation satisfies elements

21  one and two. The plaintiffs also allege that Bank of America "fail[ed] to conduct an investigation

22  upon receiving notice of a dispute from Individual Plaintiffs with regard to the completeness or

23  accuracy of the Account."[67] This allegation, while it glosses over whether the plaintiffs or the

24

25

26

---

27  [65] Mot. – ECF No. 85 at 5–6.

    [66] Compl. – ECF No. 75 at 12 (¶ 54).

28  [67] *Id.* at 7, 12 (¶¶ 30, 54).

United States District Court
Northern District of California

credit reporting agency notified Bank of America of the dispute, allows the court to infer that the credit reporting agency notified Bank of America. Therefore, it satisfies elements three and four.

Bank of America's argument that all errors happened after the loan was transferred does not warrant dismissal.[68] According to the complaint, Bank of America's erroneous accounting pre-dated the transfer of the loan to U.S. Bank on September 27, 2019.[69] Moreover, Bank of America's statement that "[a]bsent the allegation that an inaccuracy was reported on his credit report" the plaintiffs cannot maintain a Fair Credit Reporting Act claim is unhelpful.[70] The plaintiffs allege that Bank of America reported inaccurate information to the "Big Three consumer credit reporting agencies" and attached what they contend are in accurate credit reports to their complaint.[71] These allegations, if true, are sufficient to maintain a claim under the Act.

Regarding Bank of America's argument that § 1681i does not apply to it, the complaint references that section but does not rely on it as an independent basis for relief.[72] The Ninth Circuit has held that consumers may maintain a suit under §§ 1681n and 1681o against furnishers for violating § 1681s–2(b). *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). Consequently, the purported inapplicability of § 1681i does not impact the viability of the Fair Credit Reporting Act claim and the court does not reach that argument.

The court, thus, denies Bank of America's motion to dismiss the Fair Credit Reporting Act claim.

## 5. California Consumer Credit Reporting Agencies Act

The plaintiffs allege that Bank of America violated the California Consumer Credit Reporting Agencies Act, specifically California Civil Code § 1785.25(a). That provision provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit

---

[68] Mot. – ECF No. 85 at 5.

[69] Compl. – ECF No. 75 at 4 (¶ 16); Credit Reports, Ex. B to Compl. – ECF No. 75 at 31–33.

[70] Mot. – ECF No. 85 at 5.

[71] Compl. – ECF No. 75 at 13 (¶ 60); Credit Reports, Ex. B to Compl. – ECF No. 75 at 31–33.

[72] Compl. – ECF No. 75 at 13 (¶ 54).

United States District Court
Northern District of California

reporting agency if the person knows or should know the information is incomplete or inaccurate."
Bank of America argues that the plaintiffs failed to sufficiently plead the § 1785.25(a) claim because
they failed to sufficiently plead that Bank of America knew or should have known that the
information at issue was incomplete or inaccurate.[73]

For purposes of § 1785.25(a), "[t]he statutory term 'should have known' imparts a test of
reasonableness." *Holmes v. NCO Fin. Servs., Inc.*, 538 F. App'x 765, 766 (9th Cir. 2013) (cleaned
up) (holding that a debt collector's lack of "access to essential information" could be sufficient for a
trier of fact to reasonably conclude that the account was disputed). For example, in *Mann v. Wells
Fargo Bank*, the plaintiff alleged that the defendant bank provided inaccurate information to a
consumer credit reporting agency and that the defendant had reason to know of potential inaccuracies
because the plaintiff disputed the information directly with the defendant. No. C 12-03014 DMR,
2012 WL 3727369, at *4 (N.D. Cal. Aug. 27, 2012). The court held that these allegations were
sufficient. *Id.* at *5.

Similarly, in *Reagan v. Am. Home Mortg. Servicing Inc.*, the court held that the complaint
included enough factual allegations to state a claim for violating the California Consumer Credit
Reporting Agencies Act where the complaint alleged that "both parties agreed to a short sale that was
in full satisfaction of the mortgage loan" and that the "defendant knew or should have known that
plaintiffs did not owe any further balance after the close of the short sale on May 28." No. C 11-
00704 WHA, 2011 WL 2149100, at *3 (N.D. Cal. May 31, 2011).

Here, the plaintiffs contend that "the numerous, substantial overpayments on the Loan in 2018
and 2019 were more than sufficient to put [Bank of America] on notice of the fact that their deeming
of the Loan as being 120 days past due was erroneous."[74] The complaint references the plaintiffs'
"multiple efforts to inform [Bank of America] of the errors in its accounting" but does not state when
these "efforts" were made.[75] Notably, the complaint also alleges that the plaintiffs "reasonably and

---

[73] Mot. – ECF No. 39 at 6–7.

[74] Opp'n – ECF No. 93 at 5.

[75] Compl. – ECF No. 75 at 13 (¶ 60).

United States District Court
Northern District of California

United States District Court
Northern District of California

rightfully believed that the initial notice of default was sent in error and had no real reason to reach out to [Specialized] on the onset of the first notice of default sent on or about October 9, 2019."[76] In other words, the plaintiffs concede that they never thought there were any errors until after October 9, 2019. Moreover, the complaint alleges that Bank of America furnished the inaccurate information "in or around October of 2019, prior to the assignment of the Loan from [Bank of America] to [U.S. Bank]."[77]

Construing the allegations in the light most favorable to the plaintiffs, there is no basis to plausibly establish Bank of America knew or should have known that it had made errors in accounting for the plaintiffs' payments when it furnished information to consumer credit reporting agencies. The plaintiff did not raise the issue until after Bank of America allegedly furnished the erroneous information and the plaintiffs have not identified anything else that should have put Bank of America on notice of the alleged errors. Given that this is the plaintiffs' fourth opportunity to plead this claim, the court dismisses the California Consumer Credit Reporting Agencies Act claim with prejudice.

### 6. Plaintiffs' Standing to Seek Damages

Specialized and U.S. Bank assert that the plaintiffs lack standing to seek damages belonging to the trust.[78] Specialized and U.S. Bank also asserted that the plaintiffs have not alleged facts to support a claim for emotional-distress damages.[79] Under Federal Rule of Civil Procedure 12(f), the court may strike immaterial matters and, in this regard, "[a] prayer for relief that is not recoverable as a matter of law is immaterial." *Reagan v. Am. Home Mortg. Servicing Inc.*, 2011 WL 2149100, at *3.

---

[76] *Id.* at 4 (¶ 19).

[77] *Id.* at 13 (¶ 60).

[78] Mot. – ECF No. 89 at 15; Mot. – ECF No. 87 at 28–29.

[79] Mot. – ECF No. 89 at 18–19; Mot. – ECF No. 87 at 29.

The plaintiffs are both the trustees and beneficiaries of the trust and, therefore, have grounds to seek damages on behalf of the trust.[80] The plaintiffs also allege spending their own funds on improving the properties.[81] There is no basis to strike the plaintiffs' damages claims simply because the properties are owned through a trust.

Concerning the claim that emotional-distress damages are not recoverable, courts in this district have permitted recovery of such damages on claims like those brought by the plaintiffs. *See, e.g.*, *Beckham*, 2021 WL 3173188, at *2 (holding that emotional-distress damages may be recovered for a breach of the implied covenant of good faith and fair dealing); *Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642, at *1 (N.D. Cal. Mar. 8, 2007) ("Plaintiffs may be compensated for emotional distress [under the Fair Debt Collection Practices Act] even without proving the elements of the state law cause of action for intentional infliction of emotional distress.").

Thus, the defendant's requests to strike certain damages claims in the plaintiffs' complaint are denied.

## CONCLUSION

The court dismisses, with prejudice, the following: (1) the Rosenthal Act claim brought by the plaintiffs on behalf of the trust; (2) the plaintiffs' Fair Debt Collection Practices Act claim; and (3) the plaintiffs' California Consumer Credit Reporting Agencies Act claim. The defendants' motions to dismiss the other claims and their motions to strike are denied. This disposes of ECF Nos. 85, 87, and 89.

**IT IS SO ORDERED.**

Dated: May 4, 2022

_____
LAUREL BEELER
United States Magistrate Judge

---

[80] Compl. – ECF No. 75 at 2 (¶ 2).

[81] *Id.* at 5 (¶ 20).